## In re ZEHNER.

(District Court, E. D. Louisiana. February 27, 1912.)

No. 1,609.

1. BANKRUPTCY (§ 150*)—PROPERTY—MORTGAGED PROPERTY—ABANDONMENT.

A bankrupt's trustee is not required to administer property of the bankrupt burdened with liens or mortgages, but may abandon the same to the secured creditor, as it is his duty to do so whenever it is certain that the general estate will derive no benefit from a sale of the property.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 228; Dec. Dig. § 150.*]

2. BANKRUPTCY (§ 213*)—LIENS—MORTGAGED PROPERTY—FORECLOSURE—JURISDICTION OF STATE COURT.

The state has concurrent jurisdiction with a federal court to sell mortgaged property of a bankrupt on foreclosure; the federal court jurisdiction being only exclusive by reason of its custody of the res, so that, whenever the trustee abandons the property voluntarily or is forced to do so by order of court, the bankruptcy court may grant the mortgagee permission to foreclose in the state court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 334–342; Dec. Dig. § 213.*]

3. BANKRUPTCY (§ 213*)—LIENS—MORTGAGED PROPERTY—SALE.

Where it is probable that mortgaged property of a bankrupt will realize a surplus over the amount due on the mortgage, or even in doubtful cases, the property should be sold by the bankruptcy court, and the creditors should not be permitted to foreclose in the state court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 334–342; Dec. Dig. § 213.*]

4. BANKRUPTCY (§ 213*)—LIENS—MORTGAGED PROPERTY—TITLE—SALE FREE FROM LIENS.

Under the law of Louisiana, the full title to a bankrupt's mortgaged property vests in the trustee, and it may be sold by the bankruptcy court in the settlement of the estate free from liens on due notice to the lienholders affording them opportunity to appear and protect their claims.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 334–342; Dec. Dig. § 213.*]

5. BANKRUPTCY (§ 213*)—LIENS—MORTGAGED PROPERTY—SALE.

The provision of the bankruptcy act that valid liens shall not be affected by bankruptcy proceedings refers only to the validity of the contract, and not to the remedy for the enforcement of the lienholder's rights which may be changed without impairing the obligation of the contract, providing an equally efficient and adequate remedy is substituted.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 334–342; Dec. Dig. § 213.*]

6. BANKRUPTCY (§ 213*) — LIENS — MORTGAGED PROPERTY — SALE—APPRAISEMENT.

Where a mortgage on a bankrupt's property provided for a sale without appraisement, and the property was sold free from liens in the bankruptcy proceedings, an appraisement made in the usual course thereof might be disregarded in selling the same and the sale approved if made for an adequate price, as authorized by Bankruptcy Act July 1, 1898, c. 541, § 70b, 30 Stat. 566 (U. S. Comp. St. 1901, p. 3451).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 334–342; Dec. Dig. § 213.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. BANKRUPTCY (§ 213*)—LIENS—MORTGAGED PROPERTY—SALE—ADVERTISING.

On a sale of mortgaged property free from liens by a bankrupt's trustee, no more should be expended for advertising than would be required in case of a sale under the state laws.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 334–342; Dec. Dig. § 213.*]

8. BANKRUPTCY (§ 213*)—LIENS—MORTGAGED PROPERTY—SALE BY TRUSTEE.

Where it is doubtful that mortgaged property of a bankrupt when sold in bankruptcy proceedings will bring enough above the debt to pay the fees of an auctioneer, the trustee could sell the property himself without the auctioneer's assistance.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 334–342; Dec. Dig. § 213.*]

9. BANKRUPTCY (§ 213*)—LIENS—MORTGAGED PROPERTY—SALES.

Where mortgaged property of a bankrupt is sold in a bankruptcy proceeding, the details of the sale could be left to the discretion of the creditors, giving the mortgagee the right to purchase the property subject to his claim and to set off the amount thereof against the purchase price.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 334–342; Dec. Dig. § 213.*]

10. BANKRUPTCY (§ 213*)—LIENS—MORTGAGED PROPERTY—SALE—EXPENSES.

Where mortgaged property of a bankrupt is sold free from liens in bankruptcy proceedings, it cannot be charged with the expenses of the sale or fees of the referee in bankruptcy, but the mortgage creditor may be required to contribute to the charges and expenses of sale an amount not exceeding what he would be required to expend to foreclose his mortgage in the state courts.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 334–342; Dec. Dig. § 213.*]

In the matter of bankruptcy proceedings of Louis Zehner. Application of Joseph Burnstein for leave to foreclose his mortgage in the state court. Denied.

Dart, Kernan & Dart, for trustee.
Titche & Rogers, for mortgage creditor.

FOSTER, District Judge. In this case Joseph Burnstein, the holder and owner of two promissory notes, secured by mortgage on certain real estate surrendered by the bankrupt, petitions the court for leave to foreclose his mortgage · in the state court. He alleges that he has reason to believe the property cannot be sold for a price exceeding the amount of his claim, with interest, costs, and attorney's fees stipulated for in the act of mortgage. Emile W. Del Bondio, trustee of the bankrupt, opposes the petition.

The parties have agreed to the following stipulation as to the facts:

"That the mortgage referred to in plaintiff's petition was executed as alleged therein for the sum of $6,500 as therein stated, of which $200 has been paid.

"That the said act of mortgage was duly recorded in the mortgage office of the parish of Orleans, as required by the laws of Louisiana, on the day of its execution. That the interest is due on the two notes of $6,300 as stated therein. That the first mortgage on the property thirdly described in the petition and in the act of mortgage is for $2,000, and interest is due thereon since June 24, 1911.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"That the appraisement by the appraisers appointed by the trustee was for the sum of $10.275 for all of the property described in the petition or in the act of mortgage. That Joseph Burnstein, the petitioner herein, is the holder and owner of the notes, and they are not paid."

It is urged by petitioner that his contract stipulates for a sale without appraisement, and if the property is sold by the trustee it will have to bring three-fourths of an appraisement made in the bankruptcy proceedings; that it will be subject to the payment of fees of an auctioneer, of the trustee and referee in bankruptcy, and of appraisers appointed in the proceedings; that the cost of advertising the property will be at a higher rate, and the advertisement will occupy more space, than if sold by the sheriff; and that he would not have the right to bid in the property and offset his debt against the price, but would be compelled to pay the full amount over to the trustee and await a distribution in due course.

[1] It is well settled that the trustee is not required to administer property burdened with liens or mortgages, and he may abandon same to the secured creditor. In fact, it is his duty to do so whenever it is certain the general estate will derive no benefit from the sale of such property. In such contingency it was the practice under former bankruptcy acts for mortgage creditors to foreclose in the federal courts, and the jurisdiction, regardless of citizenship, with special reference to Louisiana mortgages, was upheld by the Supreme Court in Ex parte Christy, 3 How. 317, 11 L. Ed. 603, and Nugent v. Boyd, 3 How. 437, 11 L. Ed. 664. So far as I know, however, this particular question has not been presented under the act of 1898; but there would appear to be no good reason why the court, having the custody of the res, could not grant an order of sale in a summary manner on the application of the mortgage creditor. However, the application is for leave to foreclose in the state court, and the trustee has not seen fit to abandon the mortgaged property. On the contrary, he strenuously asserts there is a considerable equity in it that will benefit the general fund, and he does not admit the validity of the petitioner's mortgage. And further he contends this court has exclusive jurisdiction to administer the bankrupt estate, and cannot vest jurisdiction in the state court by its order allowing the mortgage creditor to foreclose therein.

[2] The jurisdiction of the state court to sell the property of the bankrupt, even after adjudication, is concurrent with that of the federal court, and the latter jurisdiction is only exclusive by reason of its custody of the res. Whether the trustee abandons the mortgaged property voluntarily, or is forced to do so by order of court, this court can certainly grant permission to the mortgage creditor to foreclose in the state court. In re Johnson (D. C.) 127 Fed. 618; In re San Gabriel Sanatorium Company, 111 Fed. 892, 50 C. C. A. 56; McHenry v. La Société Francais d'Epargnes, 95 U. S. 58, 24 L. Ed. 370.

[3] But it seems to me, however, that in all cases where it is probable a surplus will be realized over and above the liens and mort-

gages, or even in doubtful cases, it would be better for all parties concerned that the property be sold through the bankruptcy court.

[4] Undoubtedly, under the law of Louisiana, the full title to mortgaged property vests in the trustee in bankruptcy, and it is well settled that this court has authority to sell it free of all liens and incumbrances upon due notice to the lienholders and upon affording them opportunity to appear and protect their claims.

[5] It has been repeatedly held that the provision of the bankruptcy act that valid liens should not be affected by the bankruptcy proceedings has reference only to the validity of the contract, and not to the remedy for enforcing the lienholder's rights, which may be changed without impairing the obligation of the contract, provided an equally efficient and adequate remedy is substituted. In re Williams, 156 Fed. 939, 84 C. C. A. 434; In re Utt, 105 Fed. 754, 45 C. C. A. 32; In re Harralson, 179 Fed. 490, 103 C. C. A. 70, 29 L. R. A. (N. S.) 737. With regard to the present application I can see no reason why the property should not be sold in the bankruptcy proceedings and the mortgage holder amply protected in all his rights.

[6] Any appraisement of the property made in the usual course of bankruptcy proceedings may be disregarded in selling it and the sale approved by the court, if the price is considered adequate. Section 70b, Bankruptcy Act 1898.

[7, 8] There is no reason why advertising in bankruptcy should be at any higher rate than that fixed for legal advertisements by the state laws, nor should there be any more display than is usual in other judicial advertisements, and the trustee could very properly sell the property himself without the assistance of an auctioneer in all cases where it is doubtful that the property will bring enough to pay such fees.

[9] The details as to the sale of incumbered property may well be left to the fairness and discretion of the creditors, giving to the mortgage holder a full voice in the proceedings, under the rules of court, of course subject to the approval of the court in order that no injustice may be done. The rules adopted by this court under the bankruptcy act of 1841 in substance provided that the mortgage creditor might fix the terms of sale, provided he did not fix the terms of credit for shorter periods than those to which the bankrupt was entitled; that the order of sale should ipso facto annul the mortgages, liens, and privileges; but that they should attach to the proceeds in the same manner and to the same extent; that the mortgage creditor should have the right to purchase the property subject to his claim and to offset the amount of his claim against the price. If the present rules of the court are inadequate, they will be supplemented or amended to such an extent as may be necessary.

[10] Petitioner's fears with regard to the fees of the referee and trustee seem to me to be without foundation. It has been held in a number of cases that mortgaged property cannot be charged with the expenses of its sale or the fees of the referee and trustee in bankruptcy; but, so far as I am advised, in all these cases the mortgage holder had the right to enter upon the property and sell

it without resorting to judicial proceedings. In Louisiana the mortgage creditor would have to regularly foreclose by proceedings in court, and therefore it would seem only just and equitable that the mortgaged property should contribute a proportion of the law charges and the expenses of sale not exceeding the amount the mortgagee would be forced to expend in foreclosure proceedings in the state courts. The rules under the act of 1841, above referred to, so provided; but this is a question that does not arise at this stage of the proceedings. If the property brings the amount the trustee alleges it will, the mortgage creditor will of course be paid his claim in full, with interest and reasonable attorney's fees.

For these reasons the application will be denied.